U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Feb 11 - 2025**

John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ETHAN D. SMITH, and
JENNIFER L. DEES,

Case No.
1:25-cv-199 (MAD/DJS)

                    Plaintiffs,

**REQUEST FOR EMERGENCY**
**TEMPORARY RESTRAINING**
**ORDER UNDER FEDERAL**
**RULE OF CIVIL PROCEDURE**
**65(B)**

v.

LISA FISHER, in her official capacity as Justice—Third Department, (AD3)
ROBERT MAYBERGER, in his official capacity as Chief Clerk— Third Department, (AD3)
VINCENT W. VERSACI, in his official capacity as Acting Justice of the Supreme Court;
DENISE RESTA-TOBIN, in her official capacity as Court-Appointed 18-B Counsel;
HEATHER COREY MONGUE, in her official capacity as Attorney for the Child;
JESSICA VINSON, in her official capacity as Attorney for the Child;

                    Defendants.

---

**COMPLAINT FOR TRO, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

---

Comes now the Plaintiffs, Ethan D. Smith and Jennifer L. Dees, pro se, and pursuant to

Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 & 2202, respectfully move

this Honorable Court for the issuance of a Temporary Restraining Order, a Preliminary

Injunction, and Declaratory Relief against Defendants Hon. Versaci, Justice Fisher, Chief Clerk

Mayberger, Attorney for the Child "AFC" Mongue, AFC Vinson, and Ms. Tobin. This motion

arises from ongoing, systematic violations of Plaintiffs' constitutional rights, including but not

limited to due process violations, obstruction of justice, and interference with federal

proceedings, in direct contravention of 42 U.S.C. § 1983 and RICO, 18 U.S.C. §§ 1961–1968.

Plaintiffs respectfully request that this Court take judicial notice of the Article 78 (cv-25-

0188) **[Ex. 1]** proceeding and accompanying exhibits filed in the Appellate Division, Third

Department, on January 31, 2025. These materials provide a detailed examination of legislative

intent at both the state and federal levels, highlighting how the actions of the Defendants

1

contravene the intent of N.Y. law and the laws enacted by the United States Congress. Judicial

notice of these filings is appropriate as they are part of the public record and directly relevant to

the legal issues before this Court, particularly concerning the alleged violations of statutory and

constitutional protections (Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)).

## ALLEGATIONS

On January 31, 2025, Plaintiffs initiated an Article 78 proceeding in the Third

Department, Appellate Division, seeking to halt the improper conduct and to prompt a

jurisdictional inquiry by the higher court, given the lower court's refusal to undertake such an

examination. However, the state appellate court denied the requested injunction without

providing an opportunity for oral argument or articulating the reasons for its denial.

Subsequently, the record of this proceeding was expunged from the system, as if it had never

occurred **[Ex. 2–3].** Consequently, Plaintiffs are compelled to seek redress in federal court,

having exhausted all available remedies in the state judiciary without obtaining relief.

This matter arises from a protracted and unlawful series of actions taken by various

judicial officers, court attorneys, and other state actors throughout matrimonial proceedings

involving the Plaintiff, Ethan Smith, and his ex-wife, Veronica Smith. The initial proceedings

began on June 10, 2020, when Veronica Smith initiated divorce proceedings in the Saratoga

County Supreme Court (Index No. 2020-1227)—tainted by corruption from its inception,

beginning with the unlawful appointment of AFC Mongue on August 3, 2020–when neither

party had filed or qualified for indigent status nor requested the appointment of AFCs in this

matrimonial matter. Former Judge Pelagalli, acting sua sponte, improperly assigned Mongue to

the case setting a precedent for further judicial overreach, as evidenced by the subsequent illegal

2

appointments of AFC Vinson on January 12, 2022, and Ms. Tobin as Ms. Smith's private counsel August 12, 2022–usurping legislative powers.

The divorce was adjudicated and decreed by Judge Pelagalli, August 31, 2023. Issued without ever conducting the required financial hearings or finishing the custody hearings. Pursuant to DRL § 170(2), bifurcation of a matrimonial case requires mutual consent from both parties and a formal court order. However, Pelagalli sua sponte bifurcated the matter May 2022, without the requisite mutual consent or a formal court order on record. The decree was issued following partial custody hearings in August 2023. However, Mongue, Vinson, Tobin—along with Pelagalli, acted in concert to deny the Plaintiff the ability to subpoena or call critical witnesses, including those from the children's school, medical providers, and court-ordered therapists. This concerted effort effectively shut down the Plaintiff's case, preventing him from resting his case and conducting a fair and thorough presentation of evidence. While the Plaintiff, acting as a pro se litigant, was testifying, these parties engaged in egregious conduct, bullying and intimidating him, which further violated his constitutional rights to a fair hearing.

In early 2022, approximately twenty months after the commencement of these proceedings, Plaintiff Dees relocated from Colorado to New York to reside with Plaintiff Smith. Upon her arrival, Dees was immediately subjected to a systematic pattern of harassment, intimidation, and retaliatory actions orchestrated by the attorneys of record, Judge Pelagalli, and Ms. Smith. These individuals engaged in coordinated efforts to suppress Dees' constitutionally protected speech and to silence her attempts to seek redress from the government in violation of her First Amendment rights. This included the issuance of threats and the initiation of baseless contempt motions against Plaintiff Smith, directly in response to Dees' communications with government officials and her efforts to expose judicial misconduct and procedural irregularities.

The court, acting without jurisdiction, unlawfully ordered Dees to vacate her residence at night during Plaintiff Smiths parenting time in 2022, in direct deference to Ms. Smith's demands, despite Ms. Smith's documented and ongoing stalking and harassment of Dees. This order, issued absent any legal authority, constitutes a clear violation of due process rights under the Fourteenth Amendment and reflects a pattern of judicial overreach and deliberate indifference to credible threats of domestic violence. Within weeks Dees suffered a medical crisis, with her blood pressure spiking to 180/120, which resulted in the tragic loss of the plaintiffs' unborn child—directly attributable to the court's negligence and failure to act in the face of known, escalating threats. The record unequivocally supports that plaintiffs repeatedly sought protection and were denied, forming the basis of their Court of Claims cases against the state and the federal lawsuit against the individual state defendants in their personal capacities.

Plaintiff Dees has been unlawfully subjected to retaliatory conduct associated with the underlying matrimonial proceedings, constituting a significant violation of her constitutional rights. On October 10, 2024, during a court hearing, Dees was physically assaulted by James Bennett, the stepfather of Ms. Smith. This incident marked the second occurrence of such conduct, the first having taken place in July 2024 in Malta Town Court. Both assaults were captured on video, providing clear and irrefutable evidence of the attacks.

Despite the availability of this video evidence, the presiding judge, Hon. Versaci, failed to take any remedial action. Judge Versaci declined to hold Mr. Bennett in contempt of court or to issue any form of reprimand or admonishment. This inaction, in the face of documented and repeated assaults occurring within the courtroom, demonstrates a deliberate disregard for Ms. Dees' constitutional rights to personal security, access to the courts, and protection from retaliatory harm under the First and Fourteenth Amendments. The failure to address such

egregious conduct within a judicial setting further underscores the systemic nature of the retaliatory actions faced by Ms. Dees and supports the need for federal intervention and injunctive relief.

Plaintiff has repeatedly sought to subpoena records pertinent to critical incidents, such as a domestic violence assault perpetrated by Ms. Smith, who violated a TPO by attempting to enter the Plaintiff's home—captured on video from three separate angles. Similarly, subpoenas to medical providers are critical in the context of the mother's interference with the youngest child's neurological health, which includes placing tracking devices in all her shoes, causing severe distress and anxiety which caused chronic tic disorder. These subpoenas have been repeatedly obstructed by the court and opposing counsel.

Ms. Smith demonstrated a blatant disregard for court orders related to the registration of the children in school, failing to comply with the court's order issued on August 31, 2023. The eldest child was not registered for four months, and the two youngest children were not registered for over six weeks. Despite these violations and finding she had previously violated education law from the inception of this divorce until the August 31, 2023 order, Pelagalli continued to grant Ms. Smith final decision-making authority, which allowed her to falsely report the eldest child's homeschool credits and graduate the child at the age of 16, against the Plaintiff's objections. The Plaintiff filed contempt motions on August 28, 2023, September 22, 2023, and October 18, 2023, but the court has yet to adjudicate these motions, resulting in delays of 527, 502, and 476 days, respectively.

Plaintiff Smith was subjected to coercion by the court from the very onset, as evidenced by the issuance of extortionate pendente lite orders, which were obstructed by two unlawfully assigned attorneys and issued without a formal hearing on October 22, 2020. These orders failed

to consider the Plaintiff's statement of net worth, instead relying exclusively on Ms. Smiths fraudulent statements that Ms. Smith $0 income submitted by Ms. Smith—solidifying a pattern of fraud and judicial misconduct at the core of the case. The deliberate misrepresentations materially influenced the court's decisions, resulting in the imposition of maintenance payments of $1,985.53 and child support payments of $2,303.21, creating an ongoing financial obligation of $4,288.74 per month **[Ex. 10].**

Subpoenas in 2024 of Ms. Smith's bank accounts revealed that she was employed at multiple jobs from 2020- current all while fraudulently claiming zero income in court filings. She was renting the parties jointly owned property to her paramour and concealing the rental income from the proceedings. The court willfully avoided conducting the requisite financial hearings for 4.5 years, during which a coordinated effort led to the unlawful suspension of Plaintiff Smith's driver's license—restricted from December 7, 2021 to July 2024, **[Ex. 8]** and in July 2024, it was fully suspended. **[Ex. 9].**

Defendant Versaci has also denied Plaintiff the opportunity to file several motions to invalidate the proceedings or modify financial support claiming that the Plaintiff has not been prejudiced, and directly blocking Plaintiff from seeking appellate review. Plaintiff Smith filed emergency custody petitions on July 20, 2024, which were deliberately and unjustifiably stalled for over seven months. Defendants are now attempting to hastily adjudicate and dismiss these motions, despite having failed to respond when they were initially filed. Furthermore, the court has unlawfully lifted injunctions, thereby permitting the destruction of critical evidence relevant to Plaintiff's pending federal lawsuit.

Defendants recently attempted to transfer the case to Family Court—a procedurally and jurisdictionally defective action, as Family Court lacks authority to adjudicate matrimonial cases

6

under the Domestic Relations Law. Upon Plaintiff's timely objections, the case was redirected to Judicial Hearing Officer (JHO) Hall for recommendations only. During a hearing on January 24, 2025, the attorneys attempted to manipulate JHO Hall to dismiss this petition as they are willing to exploit any judicial officer to perpetuate their illegal appointments and obstruction of justice.

On February 7, 2025, JHO Hall filed a letter recusing himself from the case, stating that he was wholly unaware of the complexities and issues that had transpired in this matter. **[Ex. 4]** Furthermore, he accepted no compensation for his assignment, even after holding a hearing, underscoring the fact that he recognized the lack of jurisdiction over the matter. His refusal to accept payment serves as a clear indication that he was unwilling to be complicit in the ongoing manipulation of this case. The Plaintiffs believe that JHO Hall's recusal was the correct and ethical course of action, especially in light of the Defendants' persistent attempts to involve him in a conspiracy. **[Ex. 5]** Even after recusing, Defendant Attorneys continued their improper conduct by filing proposed orders to have him unlawfully terminate Plaintiff Smith's legal rights to access his child's medical and educational records on February 7 and 8th 2025. **[Ex. 6–7]**

February 5, 2025, Defendant Versaci issued a void order refusing to settle the appellate record, obstructing Plaintiff Smith's ability to file an interlocutory appeal challenging the denial of sanctions and removal of the illegal attorney appointments. This conduct follows Justice Fisher of the Ad3's refusal to sign an Order to Show Cause for a writ of prohibition pursuant to CPLR Article 78–February 4. Subsequent to the denial, both the OSC and its supporting affidavit were unlawfully removed from the NYSCEF system by the Ad3 clerk—a deliberate effort to obstruct Plaintiff's access to appellate review and suppress critical filings from the public record.

Justice Fisher's refusal to address the jurisdictional defects in the lower court proceedings serves as compelling evidence of the AD3s complicity in a broader racketeering scheme

involving lower court actors, constituting violations under RICO, 18 U.S.C. §§ 1961–1968. The Third Department administers the AD3 AFC program, which has unlawfully compensated three attorneys in this case alone and disbursed $9,000 from the AFC program indigent defense funds to a forensic evaluator in connection with this case, despite these funds being restricted for indigent defense purposes in qualifying cases.

The funds from the AFC program are supplemented by federal allocations exceeding $10,000 annually, triggering the application of 18 U.S.C. § 666(a)(1)(A), which criminalizes theft, embezzlement, and the unlawful misapplication of funds from programs receiving federal assistance. These actions violate 42 U.S.C. §§ 654, 666, and 677, which govern the administration and use of federal funds under Title IV-D and Title IV-E programs. To the extent that these funds were disbursed based on false certifications regarding their lawful use, such actions also implicate the False Claims Act, 31 U.S.C. §§ 3729–3733. Any fraudulent certifications made to secure these funds constitute actionable misconduct under this statute. Furthermore, if the processing of these payments involved the use of mail or electronic communications, it constitutes mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

Judge Pelagalli, who initiated the illegal appointments continues to serve on the AD3 Attorney for the child board, further entrenching this pattern of corruption. The AD3 has consistently denied every Article 78 proceeding and motions filed by the Plaintiffs to protect the "Enterprise" without providing written rulings, legal reasoning, or addressing the substantive constitutional claims raised.

Plaintiffs respectfully request that this Court take judicial notice of Matter of Smith v. Pelagalli, 2023 NY Slip Op 75089 (3d Dept. 2023), and the subsequent ruling by the New York Court of Appeals, Matter of Smith v. Pelagalli, 40 N.Y.3d 1060. In both instances, the courts

dismissed the matter without offering any explanation or legal reasoning for their decisions.
Further, Matter of Smith v. Heggen, 2023 NY Slip Op 77220 (3d Dept. 2023)—Third
Department, sua sponte sealed the records, thereby concealing material evidence from the public.
This judicial action directly preceded the Plaintiffs' initiation of their federal RICO lawsuit on
January 2, 2024. Plaintiffs note that state court judges have openly declared on the record after
their federal lawsuit was filed, that any filings submitted by the Plaintiffs in state courts would be
summarily dismissed, irrespective of their merit. This retaliatory stance has only intensified
following the commencement of the Plaintiffs' RICO action, evidencing a coordinated effort
among state actors to obstruct justice and deprive Plaintiffs of meaningful legal recourse.

A further hearing before Hon. Versaci is set for March 6 and 7, 2025. The continued
scheduling of hearings before individuals who have demonstrated a propensity to issue rulings
without jurisdiction underscores the emergent nature of the Plaintiff's request for an injunction.
Absent a court order restraining their actions, these parties intend to continue their unlawful
conduct, further impeding the Plaintiff's ability to seek a fair and just resolutions.

The forgoing demonstrates that a standard notice of motion for the Injunction would be
ineffective as Defendants are actively working to circumvent procedural safeguards and obscure
the unlawful nature of their actions while obstructing Plaintiffs state add federal lawsuits.

## **LEGAL STANDING**

Plaintiffs have clear legal standing to pursue injunctive and declaratory relief under both
constitutional and statutory provisions. The violations detailed herein directly impact the
Plaintiffs' constitutional rights, financial well-being, and personal safety, establishing a concrete
and particularized injury. Plaintiffs rights have been violated (First, Fifth, and Fourteenth

9

Amendments—including deprivation of due process, equal protection under the law, and unlawful retaliation for exercising their right to petition the government).

Under 42 U.S.C. § 1983, Plaintiffs are entitled to seek redress for deprivations of rights secured by the Constitution and federal law by persons acting under color of state law. Plaintiffs have substantiated claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132. The misuse of federal funds allocated under Title IV-D and IV-E of the Social Security Act, and violations of 18 U.S.C. §§ 666, 1512, 1513, and 1519 for fraud, obstruction of justice, and witness tampering, further substantiate their legal standing.

Plaintiffs have faced specific, individualized harm distinct from the general public. Plaintiff Smith's unlawful suspension of his driver's license without due process has impeded his ability to care for his children, hold a job, and participate in legal proceedings. Plaintiff Dees has endured physical assaults in court without judicial intervention and ongoing harassment for advocating. These harms are concrete, not hypothetical, and directly attributable to the Defendants' unlawful conduct. The injuries suffered by Plaintiffs are directly traceable to the Defendants' actions. The requested injunctive and declaratory relief will directly address the violations and prevent further harm.

## JURISDICTION

This Court possesses jurisdiction over the present action under 28 U.S.C. § 1331, as Plaintiffs assert claims arising under the United States Constitution and federal law, including alleged violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses, the First Amendment, the ADA, 42 U.S.C. § 12132, including 42 U.S.C. § 1983 and the RICO Act, 18 U.S.C. §§ 1961–1968. Declaratory relief is authorized under 28 U.S.C. §§ 2201–2202.

Venue is proper in this District under 28 U.S.C. § 1391(b), as all of the events giving rise to these claims occurred within the NDNY Boundaries.

## PARTIES

- **Plaintiff Ethan D. Smith** is a pro se litigant in the matrimonial action Smith v. Smith and is the father of three children.

- **Plaintiff Jennifer L. Dees** a pro se litigant who was not a party to the matrimonial case but has been targeted and retaliated against by state Defendants.

- **Defendant Lisa Fisher**: Serving as a Justice in the Third Department, (AD3) Justice Fisher overseeing several of plaintiffs appeals and petitions—each she has summarily denied.

- **Defendant Robert Mayberger**: Chief Clerk of the Third Department, responsible for the administrative functions including the management of case records.

- **Vincent W. Versaci**: Acting as a Justice of the Supreme Court—presides over the Smith v Smith matrimonial matters.

- **Denise Resta-Tobin**: Serving as Court-Appointed 18-B Counsel— illegally assigned to the Smith v. Smith case in violation of Judiciary Law 35(8).

- **Heather Corey Mongue**: an Attorney for the Child—illegally assigned to the Smith v. Smith case in violation of Judiciary Law 35(7).

- **Jessica Vinson**: an Attorney for the Child—illegally assigned to the Smith v. Smith case in violation of Judiciary Law 35(7).

## LEGAL ARGUMENTS

### I.    Judicial Immunity and the Ex parte Young Exception

While judicial immunity typically protects judges from personal liability for actions taken within their judicial capacity (Pierson v. Ray, 386 U.S. 547 (1967)), this protection does not extend to prospective injunctive relief. Under the Ex parte Young doctrine (Ex parte Young, 209

U.S. 123 (1908)), plaintiffs may seek prospective injunctive relief against state officials who act beyond their jurisdiction or enforce unconstitutional laws. The relief sought here aims to prevent future constitutional violations, rather than seek damages for past judicial acts. Judge Pelagalli exceeded jurisdiction by unlawfully assigning state-funded attorneys in a matrimonial case, and Defendant Versaci by refusing to remove them, in violation of Judiciary Law § 35(7) and (8), and FCA§ 249. This strips them of judicial immunity for purposes of injunctive relief, as their actions were not judicial in nature but administrative and unauthorized.

Plaintiffs' claims satisfy both prongs of Ex parte Young, as Defendants have continuously violated federal law through constitutional deprivations and enforcement of orders issued without jurisdiction. Plaintiffs seek prospective injunctive relief to prevent State officials from persisting in these unlawful actions. Granting this relief will halt ongoing constitutional violations and ensure compliance with federal due process requirements. Verizon Maryland v. Public Service Commission of Maryland, 535 U.S. 635, 645 (2002); Dairy Mart Convenience Stores, Inc. v. Nickel, 411 F.3d 367, 372 (2d Cir. 2005). Instead of correcting clear procedural and jurisdictional errors, Defendants compounded their misconduct, perpetuating injustice with profound, irreparable consequences. Plaintiffs aim to terminate these violations and uphold the supremacy of federal law. Moore's Federal Practice § 123.40[4][b][i].

The persistent and knowing exercise of judicial authority in the absence of lawful jurisdiction renders the implicated orders void ab initio and strips the offending officials of any claim to immunity, Stump v. Sparkman, 435 U.S. 349 (1978). Immunity does not extend to judicial acts taken in blatant disregard of the law, Gibson v. Goldston, 55 F.4th 216 (4th Cir. 2023); Rockett v. Eighmy, No. 6:21-cv-03152-MDH (W.D. Mo. Dec. 9, 2021); Gregory v.

Thompson, 500 F.2d 59 (9th Cir. 1974); Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988); and Bradley v. Fisher, 80 U.S. 335 (1872).

## II.    Anti-Injunction Act ("AIA") Does Not Apply

The Anti-Injunction Act ("AIA") (28 U.S.C. § 2283) does not bar this Court from issuing the requested relief, as the circumstances of this case fall within established exceptions to the Act. Specifically, the relief sought is necessary to aid this Court's jurisdiction and to protect the integrity of existing and pending federal judgments. The Defendants' actions in state court, including ongoing interference with federal litigation, directly threaten this Court's ability to adjudicate Plaintiffs' claims without undue obstruction.

Since the filing of the Plaintiffs' federal lawsuit (24-cv-0001), the three court-appointed attorneys—have remained improperly involved in the state proceedings despite their clear conflict of interest as named federal defendants. Their continued participation in the case has not only perpetuated constitutional violations but also constituted a deliberate attempt to obstruct the federal process. These attorneys have actively manipulated state court proceedings to secure orders that unlawfully remove Plaintiff Smith's legal authority to access his child's medical and educational records. This effort is designed to prevent Plaintiffs from obtaining evidence essential to their federal claims, as these records would reveal a coordinated conspiracy among the attorneys and Ms. Smith to obstruct justice and interfere with custodial rights. The records also demonstrate that the attorneys conspired with Ms. Smith to defraud the school system by falsifying educational credits and engaging in educational neglect which is a claim in the lawsuit.

State officials, acting without proper jurisdiction or authority, have compounded this interference by removing records from the state court system, lifting injunctions that permitted the destruction of crucial evidence, and concealing instances of domestic violence and other

criminal conduct to protect a broader racketeering enterprise. These actions effectively undermine the federal court's ability to resolve the case, divesting this Court of its rightful jurisdiction. Under these circumstances, the AIA's prohibition is inapplicable, as federal courts possess inherent authority to enjoin state proceedings when necessary to preserve their jurisdiction. The immediate and substantial risk posed by these state court actions requires injunctive relief to prevent further usurpation of federal authority. Without intervention, the Defendants will continue to manipulate state proceedings to obstruct the federal litigation and conceal their unlawful conduct.

### III.    Younger Abstention Does Not Apply in This Case

The Younger Abstention Doctrine, derived from Younger v. Harris, 401 U.S. 37 (1971), prohibits federal courts from enjoining ongoing state proceedings that implicate important state interests when the state forum offers an adequate opportunity to raise constitutional challenges. However, this doctrine is inapplicable under the circumstances outlined in this case where state proceedings are irreparably tainted by systemic bias and fraud, eliminating any prospect of a fair and impartial adjudication. Courts have held that Younger abstention is inappropriate when there is clear evidence of bias or bad faith (Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 437 (1982)).

The Third Department, Appellate Division consistently refused to issue substantive rulings, summarily denying Plaintiffs' requests for relief without addressing the merits of their claims on each occasion filings were submitted. Furthermore, the New York Court of Appeals dismissed the plaintiffs matters without providing any explanation or legal reasoning for its decisions. This pattern of summary dismissals, devoid of substantive judicial review, underscores the Plaintiffs' inability to obtain meaningful relief within the state court system and necessitates

14

federal judicial intervention. Federal courts may intervene if there is evidence of bad faith, harassment, or extraordinary circumstances threatening irreparable injury (Huffman v. Pursue, Ltd., 420 U.S. 592 (1975)).

The federal judiciary bears a paramount responsibility to uphold constitutional rights, particularly when federal statutes such as the Americans with Disabilities Act, Title IV-D child support enforcement regulations, and 42 U.S.C. § 1983 are implicated. In the present case, the initiation of a federal RICO lawsuit, alleging judicial corruption and obstruction of justice, transcends the confines of domestic relations or custody disputes, thereby firmly establishing federal jurisdiction and interest. Notably, Defendant Mongue, Vinson, Tobin, and Ms. Smith are already named defendants in the federal action, and Versaci, Fisher, and Mayberger have been notified and are under a data preservation hold, indicating their prospective inclusion as defendants. This scenario presents a direct conflict of interest that compromises the state court's capacity to adjudicate impartially. Given that the defendants are actively obstructing justice in the ongoing federal lawsuit, the federal court possesses the authority to intervene and provide appropriate relief to ensure the enforcement of federal laws and to protect constitutional rights.

## IV.    Rooker-Feldman Doctrine Does Not Apply

The Rooker-Feldman doctrine prevents federal courts from reviewing final judgments of state courts (Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). Plaintiffs do not seek to collaterally attack or overturn final judgments rendered by the state court but rather to enjoin prospective unconstitutional conduct. Instead, Plaintiffs request that this Court declare the fraudulent and jurisdictionally defective orders void ab initio and unenforceable and enjoin state officials from enforcing such orders in the future. The deliberate manipulation of judicial proceedings and

obstruction of Plaintiffs ' federal litigation by state actors constitutes independent state action, subject to federal judicial review. Courts that act without jurisdiction render void judgments, which are not protected by Rooker-Feldman (Kontrick v. Ryan, 540 U.S. 443, 455 (2004)).

Defendant Versaci's refusal to recuse himself despite blatant conflicts of interest and lack of jurisdiction nullifies any claim to finality or legitimacy of the state proceedings. State courts cannot claim jurisdictional authority where none exists. Rooker-Feldman does not bar federal jurisdiction when its alleged the state court judgment was procured through fraud, corruption, or judicial misconduct. (Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004)).

### V.    Defendants Violated Federal Law and the Supremacy Clause

Plaintiffs seek injunctive relief to halt ongoing constitutional and statutory violations committed by state officials under color of state law. The defendants' actions constitute a direct assault on federally protected rights, including due process, equal protection, and the integrity of judicial proceedings. The Supremacy Clause of the United States Constitution (Article VI, Clause 2) unequivocally establishes that federal law is the supreme law of the land, preempting any conflicting state actions.

### a.  42 U.S.C. § 1983 Deprivation of Constitutional Rights

Defendants have violated Plaintiffs' Fourteenth Amendment rights to due process and equal protection by systematically obstructing justice by refusing plaintiff the opportunity to file motions and access judicial remedies, by the removal of filings from NYSCEF, and the denial of hearings on critical matters, (Bounds v. Smith, 430 U.S. 817, 828 (1977)). Defendants suppressed exculpatory evidence and refused to allow Plaintiffs to present critical documentation, violating the Plaintiffs' right to a fair trial. The enforcement of void judgments

and fraudulent orders, rendered without jurisdiction, further violates due process. Judgments procured through fraud are nullities (United States v. Throckmorton, 98 U.S. 61 (1878)).

### b. Violations of Federal Obstruction of Justice – 18 U.S.C. §§ 1512, 1513, and 1519

Defendants' conduct constitutes clear violations of federal statutes designed to safeguard judicial integrity and protect litigants from obstruction and retaliation—rooted in the erroneous belief that state authority supersedes fundamental federal protections, directly contravene the Supremacy Clause of the U.S. Constitution and warrant federal judicial intervention.

18 U.S.C. § 1512–Defendants have engaged in conduct aimed at corruptly influencing and tampering with evidence and witnesses. Specifically, the removal of Plaintiffs' filings from the NYSCEF system constitutes a deliberate effort to obstruct the presentation of evidence in both state and federal proceedings.

18 U.S.C. § 1513–Defendants have retaliated against Plaintiffs for their participation in federal legal processes, including their pending RICO lawsuit (NDNY 24-cv-0001). This retaliation has manifested through various forms of obstruction, such as interfering with custody proceedings, unlawfully suspending Plaintiff Smith's driver's license without due process, condoning assaults against Plaintiffs in open court, and actively concealing instances of domestic violence. These retaliatory actions were designed to intimidate and silence Plaintiffs for exercising their constitutional rights, including their right to seek redress in federal court.

18 U.S.C. § 1519–Defendants knowingly altered or destroyed court records to obstruct appellate and federal review processes. As detailed in the Plaintiffs' Article 78 filing, Defendants engaged in the systematic removal and falsification of NYSCEF entries to erase evidence of unlawful judicial actions. This includes the destruction of critical documents necessary for appellate review and the concealment of orders that were improperly issued without jurisdiction.

Defendants' actions are not isolated incidents but part of a broader conspiracy to shield themselves from accountability in the lawsuit and to undermine Plaintiffs' pursuit of justice.

### c. Violation of 18 U.S.C. § 666: Theft and Fraud Against Federally Funded Programs

The Defendants' actions constitute egregious violations of 18 U.S.C. § 666, which criminalizes the theft, embezzlement, and fraudulent misuse of funds. Specifically, the Defendants misappropriated federal funds allocated under Title IV-E of the Social Security Act, which are intended to support legal representation for indigent litigants and foster care-related services. Instead, these funds were unlawfully diverted to compensate state-funded attorneys in a private matrimonial proceeding where neither party qualified for indigent defense.

By assigning state-funded attorneys to Plaintiff Smith's matrimonial case, Defendants not only violated federal funding requirements but also sought to artificially inflate Title IV-D child support incentives. The manipulation of child support orders to create inflated arrears enabled the state to claim additional federal incentives, despite the lack of legal or factual justification for such enforcement measures. This scheme resulted in the imposition of punitive financial obligations on Plaintiff Smith without due process, in direct violation of 42 U.S.C. § 666, which mandates fair and lawful procedures in the establishment and enforcement of child support.

Defendants orchestrated the improper suspension of Plaintiff Smith's driver's license, relying on manipulated and fraudulent child support records. This action not only deprived Plaintiff of his fundamental right to due process but also served as a retaliatory measure designed to coerce compliance with unlawful and extortionate financial obligations. The deliberate misuse of federally funded programs for personal and institutional gain constitutes theft and fraud. By engaging in fraudulent financial practices and leveraging federally funded programs to further

retaliatory and obstructive objectives, Defendants have violated both federal statutes and
constitutional protections.

### d. Violations of 42 U.S.C. §§ 654, 666, and 677:

Defendants have flagrantly violated federal mandates governing child support
enforcement by suspending Plaintiff Smith's driver's license without notice or a hearing, in
direct contravention of 42 U.S.C. § 666(a)(16) and 45 C.F.R. § 302.34, which explicitly require
due process protections in all child support enforcement actions.

Under 42 U.S.C. § 654, states receiving federal funds for child support enforcement are
required to establish procedures that comply with federal law, ensuring fairness and due process.
However, Defendants' administration of New York's child support enforcement mechanisms has
been marred by systemic fraud and procedural violations. As detailed in the Plaintiffs' Article 78
petition, the improper suspension of Plaintiff Smith's license was orchestrated through
clandestine ex parte arrangements and fraudulent manipulation of child support records, all
executed without affording Smith the legally required opportunity to contest these actions.

42 U.S.C. § 666 outlines procedures that states must implement to ensure due process in
child support cases, including safeguards against wrongful enforcement actions. Defendants
deliberately circumvented these procedures by manipulating child support orders to inflate
arrears, thereby triggering punitive measures such as license suspension without ever holding a
judicial hearing. This manipulation was part of a broader scheme to exploit Title IV-D federal
incentive payments, wherein states receive additional funding based on the collection and
enforcement of child support obligations.

42 U.S.C. § 677 governs the use of federal funds in programs designed to support legal
services for indigent litigants. Defendants misused these funds by unlawfully assigning state-

funded attorneys in a private matrimonial proceeding where neither party qualified for indigent defense, thereby diverting federal resources from their intended purpose.

### e.  28 U.S.C. § 1651 – Preserving Federal Jurisdiction Against Ongoing Obstruction

The All Writs Act, codified at 28 U.S.C. § 1651, grants federal courts broad authority to issue writs and orders necessary to protect their jurisdiction and ensure the fair administration of justice. In the present matter, Defendants' continuous interference with Plaintiffs' federal lawsuits and systemic obstruction of justice at the state level warrant the invocation of this Court's authority under the All Writs Act to prevent further unconstitutional and unlawful conduct. Defendants have engaged in a coordinated effort to undermine the federal judicial process by manipulating state court proceedings to obstruct the litigation of Plaintiffs' federal RICO lawsuit and related actions under 42 U.S.C. § 1983. Defendants have deliberately removed Plaintiffs' filings from the NYSCEF system, altered or destroyed court records to hinder appellate review, and engaged in retaliatory actions designed to intimidate and silence Plaintiffs. These acts of obstruction are not isolated incidents but form part of a broader scheme to shield Defendants from accountability in federal court.

The ongoing interference by Defendants, including Mongue, Vinson, Tobin, and Ms. Smith— already named as defendants in the federal RICO lawsuit—has escalated to such a degree that it compromises the federal court's ability to provide meaningful relief. The notification and data preservation holds placed on additional actors, including Versaci, Fisher, and Mayberger, highlight the extent of the conspiracy and the urgent need for federal intervention. The pending appeal in the Second Circuit (24-1574), where oral arguments were heard on February 7, 2025, (https://ww3.ca2.uscourts.gov/decisions).

The All Writs Act has historically been used to prevent litigants and state actors from interfering with federal court proceedings. In United States v. New York Telephone Co., 434 U.S. 159 (1977), the Supreme Court affirmed that federal courts may issue orders under the All Writs Act when necessary to prevent obstruction and ensure compliance with judicial mandates. Similarly, in Klay v. United Healthgroup, Inc., 376 F.3d 1092 (11th Cir. 2004), the court held that the All Writs Act may be invoked to prevent litigants from frustrating the purpose of federal court orders or undermining the court's ability to function effectively.

Defendants' actions present an immediate and substantial threat to the federal court's jurisdiction and ability to adjudicate Plaintiffs' claims. The retaliatory measures employed by state officials—including judicial manipulation, record tampering, and intimidation—constitute a direct obstruction of justice and a violation of federal law. Accordingly, Plaintiffs respectfully request that this Court exercise its authority under the All Writs Act to prevent further interference by state officials, preserve the integrity of ongoing federal litigation, and ensure that Plaintiffs' constitutional and statutory rights are fully protected.

## VI.    ARGUMENT in Support of Injunctive Relief

### a. Likelihood of Success on the Merits

Under the Supremacy Clause of the U.S. Constitution (Article VI, Clause 2), federal law is the supreme law of the land, rendering any conflicting state or local laws preempted and unenforceable. The Second Circuit in N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010), affirmed that preemption applies where compliance with both federal and state law is impossible or where state law poses an obstacle to the achievement of federal objectives. In this case, the actions of the Defendants—including the unlawful appointment of court-appointed attorneys, the misuse of federal funds, and the manipulation of child support

enforcement mechanisms—are in direct conflict with federal statutes and constitutional protections. These violations unequivocally warrant preemption and federal judicial intervention.

The Defendants' misuse of federal funds allocated under Title IV-D and Title IV-E of the Social Security Act presents a clear violation of federal mandates. These funds, designated for indigent defense and foster care support, were unlawfully diverted to compensate court-appointed attorneys and forensic evaluators in a private matrimonial action where neither party qualified for indigent defense. Federal statutes strictly govern the allocation of funding, making it impossible for Plaintiffs to comply simultaneously with state court orders and federal law. The unauthorized use of these funds by state actors constitutes a violation of federal law, rendering the state court's actions unenforceable under the Supremacy Clause.

Defendants' actions obstruct the broader objectives of federal law, including the Fourteenth Amendment's due process protections requiring fair hearings and impartial adjudication. The refusal to hold financial hearings, coupled with reliance on fraudulent financial disclosures, obstructs federal objectives. Retaliatory actions against Plaintiff Dees—including threats, assaults, and perjury designed to suppress her communications with government officials—contravening First Amendment's protections of free speech and access to the courts.

The improper appointment of state-funded attorneys in a matrimonial proceeding constitutes a non-waivable jurisdictional defect, rendering all related orders void ab initio. In Matter of Liech v. Landa, 212 AD3d 903 (2d Dept 2023). Since jurisdiction is a threshold issue, the likelihood of Plaintiffs' success on this ground is high, as supported by Matter of Sims v. Becker, 210 AD3d 1366 (3d Dept 2022). Courts have consistently held that denial of access to legal processes constitutes a fundamental violation of constitutional rights, warranting immediate relief (Bounds v. Smith, 430 U.S. 817 (1977)). Plaintiffs have also presented irrefutable evidence

of judicial fraud, including the alteration of court records and falsification of entries in the
NYSCEF system. Such fraudulent manipulation of evidence and proceedings undermines the
integrity of the judicial process, and Plaintiffs are likely to succeed in proving that these actions
were unlawful.

**b.  Balance of Equities Decisively Favors Plaintiffs**

The balance of equities in this matter weighs heavily in favor of Plaintiffs. The profound
and irreparable harm they face if injunctive relief is denied far outweighs any potential
inconvenience or prejudice to the Defendants, who are merely being required to comply with
constitutional protections and federal statutory mandates. The Second Circuit has established that
equitable considerations support the issuance of an injunction where the potential harm to
Plaintiffs is substantial, while Defendants would suffer no legitimate prejudice from adherence to
lawful procedures (Yang v. Kosinski, 960 F.3d 119, 127 (2d Cir. 2020)).

**c.  Imminent Harm to Plaintiffs if Injunction is Denied**

Plaintiff Smith faces irreparable harm due to the unlawful revocation of his driver's
license without notice or a hearing, in direct violation of 42 U.S.C. § 666(a)(16) and 45 C.F.R. §
302.34. The inability to drive has a profound impact on his capacity to work, attend court
proceedings, and fulfill parental obligations. The deprivation of mobility, when it infringes upon
fundamental rights, constitutes irreparable harm (Elrod v. Burns, 427 U.S. 347 (1976)).
Furthermore, the continued enforcement of void and fraudulent custody orders has severely
restricted Plaintiff Smith's ability to protect and care for his children, violating his fundamental
parental rights under the Fourteenth Amendment (Troxel v. Granville, 530 U.S. 57 (2000)).

The denial of Plaintiffs' First Amendment rights—including retaliation for filing federal
lawsuits, suppression of court filings, and obstruction of access to legal processes—constitutes

immediate and irreparable harm, as even brief deprivations of constitutional freedoms warrant injunctive relief. Additionally, Plaintiff Dees has been retaliated against for advocating for ADA protections and exposing judicial misconduct. She has been physically assaulted in open court without judicial intervention, creating a chilling effect on her ability to participate in legal proceedings and violating her Fourteenth Amendment right to personal security. The deliberate failure of court officials to intervene during these assaults constitutes a clear violation of her substantive due process rights (Ingraham v. Wright, 430 U.S. 651 (1977)).

Plaintiff Smith, who suffers from medically documented disabilities, including auditory processing delays, ADHD, learning disabilities, and anxiety, has been unlawfully denied reasonable accommodations in violation of the ADA. The failure to provide accommodations has significantly impaired his ability to meaningfully participate in legal proceedings as a pro se litigant, particularly against multiple unlawfully appointed attorneys and a biased presiding judge. The denial of ADA accommodations constitutes irreparable harm as it impedes a litigant's fundamental right to access the judicial system (Tennessee v. Lane, 541 U.S. 509 (2004)).

Plaintiffs' ability to parent and maintain relationships with his children has been severely compromised. He has been denied access to his children's medical, educational (FERPA), and legal records, despite standing orders granting him 50/50 legal custody. The courts' refusal to enforce custody agreements, adjudicate contempt motions, or address emergency petitions places the children at risk and deprives Smith of his fundamental parental rights. Dees has suffered severe health consequences, including life-threatening hypertension and the tragic loss of an unborn child, both directly attributable to the Defendants' unlawful actions. Her health continues to deteriorate, as she is forced to delay necessary medical procedures due to the suspension of Smith's driver's license, interfering with her federal SSDI case.

Plaintiffs have endured a sustained pattern of judicial overreach, obstruction of justice, and constitutional violations that have profoundly affected their personal, familial, and financial well-being. The denial of injunctive relief will perpetuate these harms, leaving Plaintiffs vulnerable to continued retaliation, unjust financial burdens, and threats to their physical safety.

### d. Minimal Harm to Defendants if Relief is Granted

In contrast, the issuance of injunctive relief will impose no legitimate harm upon the Defendants. The relief sought is narrowly tailored to enforce constitutional compliance and prevent further illegal actions. It will not impede the State's ability to manage its courts or administer justice effectively. This case has been ongoing since June 2020, marked by protracted delays, evidence obstruction, and illegal rulings. The only party with an interest in expediting the process is Plaintiff, who seeks a fair and just resolution. Any claims of hardship by the Defendants are without merit, as the injunction simply requires them to act within their lawful authority and adhere to established jurisdictional limits.

Given that the underlying actions are jurisdictionally defective and rendered void ab initio, any further expenditure of state resources on these proceedings represents an unjustifiable misuse of public funds. The injunction will halt the Defendants' retaliatory actions against the Plaintiffs, prevent the enforcement of void and fraudulent orders, and stop the misuse of public funds—both state and federal—that have been unlawfully diverted to a private matrimonial case. This outcome serves the broader public interest by safeguarding taxpayer dollars and ensuring that public resources are used appropriately and lawfully.

### e. Public Interest Strongly Favors Granting Injunctive Relief

The public interest overwhelmingly supports the issuance of injunctive relief in this matter. Courts have consistently held that the enforcement of constitutional rights serves the

public interest, particularly where judicial misconduct and obstruction of justice are at issue.

Allowing state actors to operate beyond their jurisdiction undermines public trust in the legal

system and threatens the foundational principles of justice and due process. Granting injunctive

relief ensures that state officials operate within the bounds of their lawful authority, thereby

reinforcing judicial integrity and restoring public confidence in the legal system.

Preventing the continued misallocation of public resources—both state and federal—

further serves the public good by ensuring that funds intended for indigent defense and child

support enforcement are not unlawfully diverted to private litigation. The public also has a

vested interest in protecting individuals from retaliation for exercising their constitutional rights,

particularly in cases involving ADA protections and parental rights. Plaintiffs have faced

targeted harassment, unlawful suspensions, and physical assaults as retaliation for seeking

justice. Preventing such abuses not only protects the Plaintiffs but also upholds the principle that

individuals should not be punished for pursuing legal redress.

## CAUSES OF ACTIONS

### Count 1:
### Violation of the Fourteenth Amendment (Due Process) – 42 U.S.C. § 1983
### -Against All Defendants-

1. Plaintiffs incorporate by reference all prior allegations as if fully set forth herein.

2. Defendants, acting under color of state law, have systematically deprived Plaintiffs of their

   Fourteenth Amendment rights to due process and equal protection.

3. Defendants' actions were arbitrary, oppressive, and exceeded the bounds of lawful authority,

   constituting government misconduct that shocks the conscience violating fundamental rights.

4. Defendants unlawfully assigned three state-paid attorneys (AFC Mongue, AFC Vinson, and

   Denise Resta-Tobin) to the matrimonial case in violation of Judiciary Law § 35, Family

Court Act § 249, and federal funding guidelines under Title IV-D and IV-E of the Social

Security Act. These appointments were made without statutory authority and continued

despite repeated objections from Plaintiff. Defendant Attorneys continued on the case despite

Plaintiffs' repeated demands for their removal on no fewer than ten occasions.

5. Defendants are now expediting rulings on motions that have been pending for approximately

seven months and rushing the final financial hearings that have not been heard in (55) fifty-

five months, in an effort to further conceal their fraudulent manipulation of child support and

custody outcomes.

6. Defendants denied Plaintiff the ability to subpoena witnesses, introduce evidence, and access

critical court records. They also failed to conduct required financial and custody hearings, in

direct contravention of New York law and federal due process requirements.

7. Defendants' actions, including the removal of court filings from the NYSCEF system and the

enforcement of fraudulent, void orders, demonstrate a coordinated effort to obstruct justice,

manipulate child support calculations for financial gain, and perpetuate judicial misconduct.

8. Plaintiff was further deprived of his parental rights through orders restricting access to

medical, dental, and school records of his children, despite existing orders granting 50/50

legal decision-making authority.

9. Plaintiffs seek: An injunction prohibiting enforcement of void state court orders and

appointments; and A declaratory judgment that the unlawful appointments and resultant

actions are null and void.

### Count 2:
### Violation of the First Amendment – 42 U.S.C. § 1983
### Against All Defendants

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Defendants, acting under color of state law retaliated against Plaintiffs for exercising their First Amendment rights to petition the government for redress of grievances.

3. Following Plaintiffs' filing of federal lawsuits exposing judicial corruption, Defendants engaged in a pattern of retaliation, including: The issuance of baseless charges and contempt motions; The suspension of Plaintiff Smith's driver's license without due process; The manipulation of court proceedings to obstruct federal litigation.

4. Plaintiff Dees, in particular, faced targeted harassment and threats for her attempts to redress government officials about the ongoing judicial misconduct.

5. Plaintiffs seek: Injunctive relief to prevent further retaliation; and A declaration that Defendants' retaliatory actions violate Plaintiffs' First Amendment rights.

## Count 3:
### Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132
### -Against Defendants, Versaci, Mongue, Tobin, Vinson

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Plaintiff Smith, who has well-documented medical conditions necessitating reasonable accommodations, was unlawfully denied protections under the Americans with Disabilities Act (ADA) during court proceedings. Furthermore, Defendants, including court-appointed attorneys, engaged in discriminatory conduct against Plaintiff Dees in her capacity as an ADA advocate. This deliberate denial of accommodations and targeted discrimination not only obstructed Plaintiff Smith's ability to fully participate in his legal proceedings but also sought to silence and marginalize Dees' efforts to advocate for his federally protected rights.

3. Defendants, acting under color of state law failed to provide necessary accommodations and further retaliated against Dees for requesting them, including by misrepresenting her as an aggressor in court hearings and obstructing her participation as an ADA advocate.

4. Plaintiffs seek: A declaration that Defendants violated the ADA; and An injunction requiring compliance with federal ADA standards in future proceedings.

### Count 4:
### Fraud on the Court – 28 U.S.C. § 1651 (All Writs Act)
### Against All Defendants

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Defendants, acting under color of state law including judges, attorneys, and court clerks, engaged in a coordinated effort to perpetrate fraud on the court by: Altering or suppressing evidence; Removing filings from the NYSCEF system; Issuing rulings without jurisdiction.

3. The fraudulent actions obstructed Plaintiffs' ability to seek justice, violated their due process rights, and materially impacted the outcomes of their legal proceedings.

4. Plaintiffs seek: A declaration that orders issued under fraudulent circumstances are void and unenforceable; and An injunction to prevent further manipulation of court records and proceedings.

### Count 5:
### Violations of Federal Child Support Enforcement Mandates –
### 42 U.S.C. §§ 654, 666, and 677
### -Against Defendant Versaci and Fisher-

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Defendants, acting under color of state law violated federal mandates governing child support enforcement by: Illegally suspending Plaintiff Smith's driver's license without notice or a hearing in violation of 42 U.S.C. § 666(a)(16); Failing to provide an administrative review as required under 42 U.S.C. § 654; and Manipulating child support calculations to inflate arrears, maximizing federal incentive payments under Title IV-D.

3. Defendants' misuse of federal funds constitutes a violation of federal law and the Supremacy Clause of the U.S. Constitution.

4. Plaintiffs seek: An injunction requiring compliance with federal child support laws; and A declaratory judgment that Defendants' actions were unlawful and void.

## Count 6:
## Obstruction of Justice – 18 U.S.C. §§ 1512, 1513, and 1519
## Against All Defendants

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Defendants, acting under color of state law engaged in obstruction of justice by: Tampering with evidence and witnesses in both state and federal proceedings (18 U.S.C. § 1512); Retaliating against Plaintiffs for filing federal lawsuits, including by manipulating state court proceedings (18 U.S.C. § 1513); and Destroying or altering court records to hinder Plaintiffs' ability to obtain fair judicial review (18 U.S.C. § 1519).

3. These actions constitute a direct violation of federal statutes designed to protect judicial integrity and litigants' rights.

4. Plaintiffs seek: A declaration that Defendants' actions constitute obstruction of justice; and An injunction to prevent further retaliatory or obstructive conduct.

## Count 7:
## Violation of the Fourteenth Amendment (Substantive Due Process –
## Failure to Protect from Assault) – 42 U.S.C. § 1983
## Against All Defendants

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Under the Fourteenth Amendment's Substantive Due Process Clause, Plaintiffs have a fundamental right to personal security and bodily integrity. Defendants, acting under color of state law, exhibited deliberate indifference to the Plaintiffs' safety, failing to protect them from known, imminent threats of violence within court proceedings and other legal settings.

3. On multiple occasions, including but not limited to the hearing on October 10, 2024, Plaintiff Dees was physically assaulted by Veronica Smith's stepfather in open court. This incident

was captured on video and witnessed by Hon. Versaci, the three attorneys and other court
officers. Despite the clear evidence and the immediate danger posed, no action was taken by
the judge or other court officials to hold the assailant accountable or to ensure the Plaintiffs'
safety in future proceedings.

4. January 24, 2025, during another court hearing, Plaintiffs were subjected to further
   intimidation and threats. The attorneys involved in the proceedings falsely portrayed Plaintiff
   Dees as the aggressor in prior incidents to discredit her role as an ADA advocate and to
   justify their failure to protect her from actual harm.

5. The Defendants failure to act constitutes a clear violation of Plaintiffs' constitutional rights
   under the Fourteenth Amendment's substantive due process protections. While DeShaney v.
   Winnebago County Dept. of Social Services, 489 U.S. 189 (1989), limits the general
   obligation of state actors to protect individuals from private harm, it explicitly acknowledges
   that when the state creates or fosters a dangerous environment, or when individuals are in the
   state's custody or under its direct control, an affirmative duty to protect arises. In this case,
   Plaintiffs were physically present in a courtroom—an environment entirely controlled and
   regulated by the judicial system, where litigants have a reasonable expectation of safety and
   protection from known threats.

6. The Defendants had full knowledge of the imminent threats of violence against Plaintiffs and
   were in a unique position to prevent such harm. This duty is heightened within the courtroom
   setting, where the state not only controls the physical space but also sets the procedural
   framework that governs behavior and ensures the protection of all participants. By failing to
   intervene during known assaults—occurring openly in court and captured on video—
   Defendants demonstrated deliberate indifference to Plaintiffs' safety. This gross negligence

and willful disregard for Plaintiffs' rights constitute a violation of the fundamental duty of

care that courts owe to those appearing before them, especially when threats are not just

foreseeable but directly communicated to and observed by judicial officers.

7. Defendants' actions and omissions demonstrate deliberate indifference to Plaintiffs' safety

and well-being, amounting to gross negligence.

8. As a result of Defendants' failure to intervene, Plaintiffs suffered emotional distress, and

ongoing threats to their safety, both within and outside of the courtroom.

9. Plaintiffs seek: A declaration that Defendants' failure to protect Plaintiffs from known

assaults and threats constitutes a violation of their Fourteenth Amendment rights.

**Count 8**
**Violation of the Separation of Powers—Usurping U.S. Congressional and**
**New York Legislative Authority**
**Against All Defendants**

1. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

2. Defendants, acting under color of state law, have usurped the powers and intent of both the

U.S. Congress and the New York State Legislature by overstepping their judicial authority

and violating established legislative mandates.

3. Article III, Section 1 of the New York State Constitution establishes the legislative authority

in New York: "The legislative power of this state shall be vested in the senate and assembly."

The New York Court of Appeals has reinforced in Bourquin v. Cuomo, 85 N.Y.2d 781

(1995), that no branch may usurp the powers of another. The legislative branch cannot

delegate its core law-making authority to the executive or judicial branches unless explicitly

allowed under constitutional provisions.

4. Article I, Section 1 of the U.S. Constitution establishes the foundational principle of

separation of powers in the American government. It states that all legislative powers—the

32

authority to make laws—are vested exclusively in the U.S. Congress, which is composed of the Senate and the House of Representatives. In Seila Law LLC v. Consumer Financial Protection Bureau (2020), the Supreme Court reaffirmed the importance of this separation. Specifically, Federalist No. 70 discusses how the "jarrings of parties" and differing opinions in a multi-branch, multi-party system promote careful consideration, while Federalist No. 51 emphasizes how this structure "checks excesses in the majority", preventing a tyranny of the majority and safeguarding minority rights.

5. Defendants unlawfully appointed AFCs and 18-B Counsel in matrimonial proceedings, contravening the explicit statutory limitations established by the New York Legislature in Judiciary Law § 35(7) & (8) and Family Court Act § 249. These laws restrict the appointment of such counsel to cases involving indigency in Family Court proceedings—not in private matrimonial actions.

6. Defendants unlawfully diverted federal funds allocated under Title IV-D and Title IV-E for unauthorized uses in private matrimonial litigation. These funds, strictly designated by Congress for indigent defense and child welfare services, were misused to pay for forensic evaluations and attorney fees in non-qualifying cases, violating 42 U.S.C. §§ 654, 666, and 677. Such actions undermine the legislative authority of Congress, which governs the allocation and use of federal funds, and constitute a misappropriation of public resources in direct conflict with the Supremacy Clause of the U.S. Constitution (Article VI, Clause 2).

7. By issuing rulings without jurisdiction, enforcing void orders, and obstructing access to due process, Defendants have usurped legislative intent regarding procedural safeguards designed to protect litigants' rights under both federal and state law. The failure to adhere to required financial hearings, unauthorized bifurcation of matrimonial proceedings without statutory

authority, and manipulation of child support enforcement mechanisms directly contravene the legislative framework established by the New York State Legislature and Congress.

8. Defendants' actions obstruct ongoing federal proceedings, including Plaintiffs' RICO lawsuit and related constitutional claims. By interfering with Plaintiffs' access to federal courts and manipulating state proceedings to retaliate against Plaintiffs' federal filings, Defendants have violated Congress's constitutional authority under Article III to regulate the jurisdiction and functioning of federal courts.

9. Defendants have manipulated child support orders and enforcement mechanisms to inflate arrears and suspend Plaintiff Smith's driver's license without due process. These actions violate federal mandates under Title IV-D of the Social Security Act and undermine Congress's authority to regulate child support enforcement nationwide. The improper suspension of driving privileges, without adhering to federally mandated procedural protections (42 U.S.C. § 666(a)(16)), represents a direct conflict with congressional intent.

10. Pursuant to 28 U.S.C. §§ 2201, Plaintiffs seek a judicial declaration that the actions of the Defendants have violated their constitutional and statutory rights. A declaratory judgment is necessary to clarify and affirm the legal rights of the Plaintiffs and to establish that the Defendants' actions were unconstitutional, unlawful, and void.

11. Pursuant to 28 U.S.C. § 2202, injunctive relief is necessary to give practical effect to the declaratory judgment and to prevent ongoing or future violations of the Plaintiffs' rights.

12. Plaintiffs respectfully request that this Court issue declaratory judgments as follows:

    a. A declaration that the appointments of AFC Mongue, AFC Vinson, and 18 b Ms. Resta-Tobin in a matrimonial case were unlawful, made without statutory authority, and are null and void ab initio and unenforceable,

b. A declaration that the Defendants usurped legislative powers by diverting federal and state funds to unauthorized uses in matrimonial proceedings, in violation of federal statutes and New York State law—a misappropriation under 18 U.S.C. § 666 and violates the Supremacy Clause of the U.S. Constitution.

c. A declaration that the Defendants' removal of filings from the NYSCEF system, the denial of Plaintiffs' right to file motions, and the issuance of void orders constitute obstruction of justice under 18 U.S.C. §§ 1512, 1513, and 1519, as well as retaliation for Plaintiffs' participation in federal litigation in violation of the First Amendment.

d. A declaration that the Defendants' actions have violated Plaintiffs' due process rights under the Fourteenth Amendment by depriving them of fair and impartial legal proceedings, access to the courts, and the ability to present evidence and subpoena witnesses. Defendants' targeted conduct also constitutes a violation of equal protection by singling out Plaintiffs for retaliatory and adverse treatment.

e. A declaration that the suspension of Plaintiff Smith's driver's license, the enforcement of fraudulent financial obligations, and the removal of Plaintiffs' legal filings from court systems were unlawful and are unenforceable.

13. Plaintiffs further request an injunction prohibiting Defendants from further actions that violate the separation of powers by exceeding their judicial authority, misappropriating federal and state funds, or obstructing federally protected rights.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

1. Immediate Issuance of a Temporary Restraining Order prohibiting the Defendants from continuing their unlawful actions, including but not limited to the enforcement of void orders, obstruction of justice, and retaliation against Plaintiffs.

2. Issue an order staying all ongoing proceedings in the Saratoga Supreme Court case (2020-1227) until a hearing can be held, as the named defendants lack the requisite jurisdiction to hear or adjudicate these matters.

3. Preliminary Injunction: Ordering Defendants to cease all actions that violate Plaintiffs' constitutional rights, including:

    a. The unlawful assignment of court-appointed attorneys in the matrimonial proceedings.

    b. Any further retaliation against Plaintiffs for asserting their federal rights, including but not limited to the manipulation of legal proceedings, alteration of court records, or suppression of evidence.

4. Permanent Injunction: Enjoining the Defendants from:

    a. Continuing to enforce any fraudulent or jurisdictionally defective orders.

    b. Engaging in further acts of obstruction of justice, retaliation, or fraud within the course of Plaintiffs' ongoing cases.

    c. Misappropriating federal or state funds intended for indigent defense or child support enforcement in violation of federal law.

5. Declaratory Relief: Declaring the following:

    a. The unlawful assignment of AFC Mongue, AFC Vinson, and Ms. Resta-Tobin to the matrimonial case was beyond Defendants' statutory authority and void ab initio.

b. Defendants' actions in misappropriating funds, obstructing justice, and retaliating against Plaintiffs for their engagement in federal litigation constitute violations of federal law and Plaintiffs' constitutional rights.

c. The Defendants' actions, including the removal of filings from the NYSCEF constitute violations of federal law, including obstruction of justice under 18 U.S.C. §§ 1512, 1513, and 1519, as well as retaliation for Plaintiffs' First Amendment rights.

d. The suspension of Plaintiff Smith's driver's license and the imposition of extortionate financial obligations constitute violations of Plaintiffs' constitutional rights under the Fourteenth Amendment and are unenforceable.

e. The misuse of federal funds allocated for indigent defense and child welfare, as evidenced by the unlawful diversion of these funds in matrimonial proceedings, constitutes violations of the Supremacy Clause and federal statutes, including 18 U.S.C. § 666.

6. Granting any further relief that the Court deems just and proper to protect Plaintiffs' rights and interests, and to prevent the continuation of Defendants' unlawful actions.

Ethan D. Smith and Jennifer L. Dees hereby affirm under penalties of perjury this 10th day of February 2025, under the laws of New York which may include a fine of imprisonment that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law. This filing is not harass or annoy the Defendants.

Respectfully submitted this 10th day of February 2025.

ETHAN D. SMITH
16 Grant Hill Rd
Clifton Park, NY 12065
ethan.smith@gmail.com
(518) 817-7718

JENNIFER L. DEES
16 Grant Hill Rd
Clifton Park, NY 12065
mommabearjenny@gmail.com
720-799-6190